UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: BAIR HUGGER FORCED AIR　　　　　　MDL No. 15-2666 (JNE/DTS)
WARMING DEVICES PRODUCTS　　　　　　　ORDER
LIABILITY LITIGATION

This Document Relates to:
Case No. 21-cv-2752 (*Norton v. 3M Company*)

　　　Richard Norton brought this action against 3M Company; Arizant Healthcare, Inc.; Gadsden Regional Medical Center, LLC; Anesthesia Associates, P.A.; Joseph Scott Rayburn, MD; William T. Carr, CRNA; Northeast Orthopedic Clinic, PC; and Glenn L. Wilson, MD, in the Circuit Court of Etowah County, Alabama.  After 3M Company and Arizant Healthcare (collectively, "3M") removed the action from state court, *see* 28 U.S.C. §§ 1332(a)(1), 1441(a), the Judicial Panel on Multidistrict Litigation transferred it from the Northern District of Alabama to the District of Minnesota for inclusion in MDL No. 2666, *see id.* § 1407.  The action is before the Court on Norton's Motion for Remand.  *See id.* § 1447(c).  For the reasons set forth below, the Court grants the motion.

　　　"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." *Id.* § 1441(a).  A district court has original jurisdiction of a civil action "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

1

costs, and is between . . . citizens of different States." *Id.* § 1332(a)(1). "For a party to remove a case to federal court based on diversity jurisdiction, the parties must be diverse both when the plaintiff initiates the action in state court and when the defendant files the notice of removal in federal court." *Reece v. Bank of N.Y. Mellon*, 760 F.3d 771, 777 (8th Cir. 2014) (quoting *Chavez-Lavagnino v. Motivation Educ. Training, Inc.*, 714 F.3d 1055, 1056 (8th Cir. 2013)). "[T]he party seeking removal has the burden to establish federal subject matter jurisdiction; all doubts about federal jurisdiction must be resolved in favor of remand." *Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009) (citation omitted); *see Hubbard v. Federated Mut. Ins. Co.*, 799 F.3d 1224, 1227 (8th Cir. 2015).

In its Notice of Removal, 3M asserted that "[t]here is complete diversity of citizenship between properly joined parties" and that "the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 3M stated that, "[a]t the time [Norton] commenced this civil action, and at all times since, 3M [Company] was and is a Delaware corporation with its principal place of business in Minnesota"; that Arizant Healthcare "was a Minnesota corporation with its principal place of business in Minnesota"; that Arizant Healthcare "was entirely dissolved in December 2014"; that Norton "is a citizen of Alabama"; and that Norton "alleges that [Gadsden Regional Medical Center, Anesthesia Associates, Rayburn, Carr, Northeast Orthopedic Clinic, and Wilson] are all citizens of Alabama."[1] 3M asserted that the citizenship of Gadsden

---

[1] Although 3M acknowledged that "[t]he citizenship of non-corporation business entities is that of each of its members," it did not make the necessary allegations. *See*

2

Regional Medical Center, Anesthesia Associates, Rayburn, Carr, Northeast Orthopedic Clinic, and Wilson should be disregarded because Norton "fraudulently joined and fraudulently misjoined these defendants." In the alternative, 3M asserted that jurisdiction over Norton's claims against 3M may be maintained by severing and remanding his claims against Gadsden Regional Medical Center, Anesthesia Associates, Rayburn, Carr, Northeast Orthopedic Clinic, and Wilson.

Norton moved to remand the action to state court for lack of subject-matter jurisdiction. He asserted that complete diversity of citizenship does not exist, that he neither misjoined nor fraudulently joined the nondiverse defendants, and that his claims against the nondiverse defendants should not be severed.

3M opposed Norton's motion. It argued that Norton fraudulently joined Gadsden Regional Medical Center, Anesthesia Associates, Rayburn, Carr, Northeast Orthopedic Clinic, and Wilson. In the alternative, 3M argued that the Court should sever Norton's claims against them, remand the claims to state court, and retain jurisdiction over his claims against 3M.

*Fraudulent joinder*

"Whether a plaintiff has fraudulently joined a party to defeat diversity jurisdiction is a question of subject matter jurisdiction . . . ." *Wilkinson v. Shackelford*, 478 F.3d 957,

---

*Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) ("A party removing a case to federal court based on diversity of citizenship bears the burden of establishing the citizenship of the parties."); *cf. Jallad v. Madera*, 784 F. App'x 89, 94 (3d Cir. 2019) ("As noted above, Madera is a diverse party. Therefore, even if he had been fraudulently joined, his presence would not have destroyed jurisdiction, and he should not have been dismissed pursuant to that doctrine.").

963 (8th Cir. 2007). "The doctrine of fraudulent joinder allows a district court to assume jurisdiction over a facially nondiverse case temporarily and, if there is no reasonable basis for the imposition of liability under state law, dismiss the nondiverse party from the case and retain subject matter jurisdiction over the remaining claims." *Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 893 (8th Cir. 2014) (quoting *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1031 (8th Cir. 2012)).

"A party has been fraudulently joined when there exists no reasonable basis in fact and law to support a claim against it." *Hubbard*, 799 F.3d at 1227 (quoting *Thompson v. R.J. Reynolds Tobacco Co.*, 760 F.3d 913, 915 (8th Cir. 2014)); *see Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 763 n.9 (7th Cir. 2009) ("Actual fraud in alleging jurisdictional facts will suffice to invoke the doctrine, but the more typical ground is that a plaintiff brought a claim against a nondiverse defendant 'that simply has no chance of success, whatever the plaintiff's motives.'" (citation omitted)). "Joinder is not fraudulent if state law *might* impose liability on the resident defendant under the facts alleged." *Halsey v. Townsend Corp. of Ind.*, 20 F.4th 1222, 1226 (8th Cir. 2021). In determining whether a plaintiff fraudulently joined a defendant, a court "resolv[es] all facts and ambiguities in the current controlling substantive law in the plaintiff's favor." *Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075, 1079 (8th Cir. 2021) (quoting *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 811 (8th Cir. 2003)). "[I]n situations where the sufficiency of the complaint against the non-diverse defendant is questionable, 'the better practice is for the federal court not to decide the doubtful question in connection with a motion to remand but simply to remand the case and leave the question for the state courts to decide.'"

4

*Filla*, 336 F.3d at 811 (quoting *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 406 n.6 (8th Cir. 1977)).  In certain circumstances, a court may "pierce the pleadings" to determine whether state law might impose liability on a nondiverse defendant.  *Williams v. Homeland Ins. Co. of N.Y.*, 18 F.4th 806, 812-13 (5th Cir. 2021); *see GranCare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 549 (9th Cir. 2018); *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012).

In his complaint, Norton made several allegations about the Bair Hugger.  He alleged that the Bair Hugger, which is manufactured and sold by 3M, "consists of a portable heater or blower connected by a flexible hose to a disposable blanket that is placed over (or in some cases under) surgical patients"; that it "intakes air from the surrounding area (often from the non-sterile floor of the operating room) and passes it through the intake filter and internal air pathways of the machine and into an outlet hose"; that "[t]he warm air travels through the distal end hose, which does not have an air filter, and into the blanket, which has different compartments through which the warm air moves"; that "[t]he warm air exits the blanket through multiple holes over a patient's exposed skin, providing warmth to the patient during surgery"; that "[t]he escaped air creates airflow and/or convection currents that push against and disrupt the downward airflow of the operating theater"; and that the warmed air "deposits bacteria from the non-sterile portions of the operating theater to the surgical site."  Norton also alleged that "the inadequate air filtration system of the Bair Hugger allows pathogenic-carrying cells . . . to penetrate the intake filter of the device and colonize inside the device" and that, "[w]ithout an adequate filtration system at the distal hose outlet, the device releases

5

contaminants into the operating theater and directly onto the surgical site itself." He claimed that 3M knew for more than two decades "that the Bair Hugger emits significant levels of internally generated airborne contaminants into the operating theater and that the exhaust generated thereby creates convective airflow patterns that disrupt the unidirectional airflow of the operating theater, dramatically increasing the risk of infection for patients undergoing lengthy surgeries." Norton also claimed that 3M nevertheless "marketed the Bair Hugger as safe in both general and orthopedic surgeries"; that 3M "misrepresented that the air filtration system of the Bair Hugger satisfied High Efficiency Particulate Air . . . standards"; and that 3M has "been aware of the pathogenic contamination of the internal airflow pathways of the Bair Hugger since at least as early as 2009."

  Norton made several allegations about his surgery and infection. He alleged that he underwent surgery to replace his left knee in November 2019 at Gadsden Regional Medical Center; that Wilson, who was employed by Northeast Orthopedic Clinic, performed the surgery; that Rayburn and Carr, who were employed by Anesthesia Associates, "provided general anesthesia services during which they utilized a forced air warming device believed to be a Bair Hugger"; and that Gadsden Regional Medical Center provided the Bair Hugger. Norton stated that he started to experience pain in his left knee in March 2020; that "he underwent an excisional debridement on March 19, 2020 during which a large pus filled abscess around the knee was discovered"; and that "[c]ultures from the abscess and [his] blood revealed a methicillin-resistant Staphylococcus aureus (MRSA) infection in his left knee." He claimed that "the Medical

6

Defendants"—Gadsden Regional Medical Center, Wilson, Northeast Orthopedic Clinic, Rayburn,[2] Carr, and Anesthesia Associates—"failed to keep the surgical field sterile in various ways, including but not limited to, the utilization of the Bair Hugger system" and that "[t]hese violations . . . were a proximate cause of the MRSA infection in [his] left knee."  After he was diagnosed with a MRSA infection, Norton stated that he underwent several revisions and an excisional debridement of his left knee; that the MRSA infection spread to his lungs; that he underwent another total left knee arthroscopy; that he will undergo another total left knee arthroscopy; and that, "[i]f this last arthroscopy surgery is not effective, [he] has been informed that the only other course of action is to amputate the leg."

Norton asserted the following claims against 3M: negligence; strict liability; breach of express warranty; breach of implied warranty; violation of the Minnesota Prevention of Consumer Fraud Act; and consumer fraud and/or unfair and deceptive trade practices under state law.  He asserted negligence claims against Gadsden Regional Medical Center, Wilson, Northeast Orthopedic Clinic, Rayburn, Carr, and Anesthesia Associates.

"When considering issues of state law, . . . the transferee court must apply the state law that would have applied had the cases not been transferred for consolidation."  *In re Gen. Am. Life Ins. Co. Sales Pracs. Litig.*, 391 F.3d 907, 911 (8th Cir. 2004).  "Section 6-5-551 [of the Alabama Medical Liability Act] has been considered a substantive

---

[2]  In his complaint, Norton included "Russell" instead of "Rayburn" in his definition of "Medical Defendants."

provision applicable in federal court." *Taylor v. Starr*, No. 20-cv-489, 2021 WL 1610671, at *4 (N.D. Ala. Apr. 26, 2021) (citation omitted). The Act states:

> In any action for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, whether resulting from acts or omissions in providing health care, or the hiring, training, supervision, retention, or termination of care givers, the Alabama Medical Liability Act shall govern the parameters of discovery and all aspects of the action. The plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts. . . . Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted. Any party shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission.

Ala. Code § 6-5-551; *see Mikkelsen v. Salama*, 619 So. 2d 1382, 1384 (Ala. 1993).

3M maintained that "[t]here is no reasonable basis in fact and law to support Norton's claim against" Gadsden Regional Medical Center, Wilson, Northeast Orthopedic Clinic, Rayburn, Carr, and Anesthesia Associates. "[T]o the extent Norton relies on 'various' other acts (apart from use of the Bair Hugger system) that were allegedly negligent," 3M argued, "he has not provided a 'detailed specification and factual description' of those acts as Section 6-5-551 requires." As to use of the Bair Hugger, 3M asserted that "using the Bair Hugger system cannot be breach of the standard of care—using the Bair Hugger *is* the standard of care." 3M has not demonstrated that Norton's negligence claims against Gadsden Regional Medical Center, Wilson, Northeast

8

Orthopedic Clinic, Rayburn, Carr, and Anesthesia Associates have no reasonable basis in law and fact.  *See In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 9 F.4th 768, 789 (8th Cir. 2021) ("To exclude the experts' opinions here because their conclusions lacked general acceptance would be to take a side on an issue that is 'currently the focus of extensive scientific research and debate.'" (citation omitted)), *cert. denied*, 90 U.S.L.W. 3347 (U.S. May 16, 2022) (No. 21-1100).

*Severance*

3M argued in the alternative that the Court should sever Norton's claims against the nondiverse defendants, remand them to state court, and retain jurisdiction over his claims against 3M.  The Court rejected 3M's argument in other actions that were transferred by the Judicial Panel on Multidistrict Litigation to the District of Minnesota for inclusion in MDL No. 2666.  *O'Haver v. Anesthesia Assocs. of Kan. City, P.C.*, Case No. 19-cv-920, slip op. at 12-13 (D. Minn. Feb. 19, 2020); *Tye v. St. Luke's E. Anesthesia Servs., P.C.*, Case No. 19-cv-2089, slip op. at 12-13 (D. Minn. Feb. 19, 2020).  3M has not demonstrated that a different conclusion is warranted here.

*Costs, expenses, and attorney's fees*

Norton requested an award of costs, expenses, and attorney's fees under 28 U.S.C. § 1447(c).  The Court denies his request.  *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

*Conclusion*

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Norton's Motion for Remand [Docket No. 15] is GRANTED.

2. Case No. 21-cv-2752 is REMANDED to the Circuit Court of Etowah County, Alabama.

3. The Clerk of Court is directed to mail a certified copy of this Order to:

    Cassandra Johnson
    Circuit Clerk
    Etowah County Judicial Building
    Circuit Clerk's Office
    801 Forrest Avenue, Suite 202
    Gadsden, AL  35901

Dated: May 25, 2022

s/Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge
